UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LAUREN WILLIAMS-LESTER,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**VISION FINANCIAL CORPORATION,** )<br>)<br>Defendant. )<br>_____) | Case No.: **2:15-cv-06662-BMS** |

## MOTION FOR DEFAULT JUDGMENT

Now comes Plaintiff, Lauren Williams-Lester (hereinafter "Plaintiff"), by and through counsel, pursuant to the Court's entry of default against the Defendant, and respectfully moves the Court to enter judgment against Defendant, Vision Financial Corporation (hereinafter "Defendant"). Plaintiff respectfully requests that this Court enter judgment against Defendant for $4,595, including $1000 in statutory damages and reasonable attorney fees and costs the Plaintiff incurred in bringing this action, as detailed in the fee bill attached as Exhibit B. Default Judgment against Defendant is appropriate since Defendant failed to Defend this action or retain an attorney, prompting the Court's entry of default against Defendant. Further reasons are outlined below.

**I.     INTRODUCTION AND PROCEDURAL BACKGROUND**

Initially, Defendant was retained by counsel and participated in this case. On June 1, 2016, this Court issued an Order allowing Defendant's counsel to withdraw and giving Defendant sixty (60) days to retain new counsel. Defendant never retained new counsel, despite multiple opportunities to do so. Defendant has neither retained an attorney nor made any attempt to defend itself in this action.

## II. FACTS

Beginning in or about 2014, and continuing into April 2015, Defendant placed repeated harassing telephone calls to Plaintiff's home and cellular telephones in order to collect an alleged credit card debt. See Docket Entry No. 1. at ¶¶13 & 15. Plaintiff received calls from Defendant 2-3 times per day. Id. at ¶16. Plaintiff received some of Defendant's calls before 8:00am and after 9:00pm. Id. at 18. Plaintiff told Defendant that she only wanted to be contacted by mail. Id. at ¶19. But the Defendant continued to call the Plaintiff. Id. at ¶21.

In addition to calling Plaintiff repeatedly and continuously, despite being told to stop in writing, Defendant also threatened and badgered Plaintiff during some of these calls. Specifically, Defendant told Plaintiff that unless she paid the alleged debts he would face "legal action." See Docket Entry No. 1 at ¶¶22-23. Yet to date the Defendant has taken no steps toward suing Plaintiff for the debt. Id. at ¶23. Finally, Defendant never sent Plaintiff written notice as required by § 1692g of the FDCPA.

These actions were abusive and violated several sections of the FDCPA and the TDCA, thereby entitling Plaintiff to damages.

## III. ARGUMENT

As Defendant did not defend this action, Defendant is treated as if it had never filed an Answer and the Court may issue default judgment based on its discretion. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3rd Cir. 1984).Given Defendant's liability, Plaintiff is entitled to recover damages under the FDCPA that, without the requested judgment, Plaintiff would not be able to enforce.

### A. Claims

Therefore, default judgment against Defendant is appropriate as to Plaintiff's claims under the FDCPA:

The Plaintiff's Complaint alleges multiple violations of the FDCPA. The FDCPA is a strict liability statute. See Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997); See also Russell v. Equifax ARS, 74 F.3d 30, 33 (2nd Cir. 1996). ***Only a single violation of the Act need be proven in order to impose liability.*** Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997). (emphasis added); see also Turner v. J.V.D.B. & Assoc., Inc., 330 F.3d 991, 995 (7th Cir. 2003). "A consumer need not show intentional conduct by a debt collector to be entitled to damages." See Id. Once a single violation of the FDCPA is demonstrated, a plaintiff is entitled to recover total FDCPA statutory damages of $1,000, actual damages sustained as a result of the defendant's conduct, and the costs of the action plus reasonable attorney's fees. 15 U.S.C. §1692k.

As plead in the Complaint, the Defendant violated the FDCPA as follows:

1.  **§1692c(a)(1)**: This section of the FDCPA prohibits debt collectors from communicating with a consumer "at any unusual time or place or place known or which should be known to be inconvenient to the consumer." See 15 U.S.C. §1692c(a)(1). Under this section of the FDCPA, once a consumer informs a debt collector that calls at a particular time are inconvenient, the debt collector may not call at that time. Austin v. Great Lakes Collection Bureau, Inc., 834 F.Supp. 557, 559 (D. Conn. 1993) (debt collector violated FDCPA by calling consumer at work when she told them not to do so). Here, the Plaintiff was called before 8:00am and after 9:00pm, which is a *per se* violation of the statute.

2.  **§1692d**: This section of the FDCPA prohibits debt collectors generally from engaging in any conduct "the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt." See 15 U.S.C. §1692d. Defendant violated this section by calling Plaintiff after being told that she did not wish to receive any more calls, by calling Plaintiff repeatedly on a near-daily basis and often multiple times a day, by

continuing to call Plaintiff after being instructed to stop, and by threatening Plaintiff with legal action and criminal charges without the intent or legal means to do so.

2. **§1692d(5)**: This section of the FDCPA prohibits debt collectors "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." See 15 U.S.C. §1692d(5). While this section requires an intent to harass, unlike other sections of the FDCPA which are strict liability, that intent may be implied from the nature and pattern of calls by a jury or trier of fact. See e.g. Regan v. Law Offices of Edwin A. Abrahamsen & Assoc., P.C., 2009 WL 4396299, *6 (E.D. Pa. Dec. 1, 2009). A high volume of calls over a short period, such as calls every day or every other day, and even more so multiple calls a day, violate this section as they are not only repeated and continuous but demonstrate a Defendant's intent to harass. See Carr v. NCO Financial Systems, Inc., 2011 WL 6371899, at *2 (E.D. Pa. Dec. 20, 2011); Valentine v. Brock & Scott, PLLC, 2010 WL 1727681, at *4 (D.S.C. April 26, 2010) (holding eleven (11) calls in nineteen (19) days constituted harassment); and Brown v. Hosto & Buchan, PLLC, 748 F.Supp.2d 847, 852 (W.D. Tenn. 2010) (holding seventeen (17) calls in one (1) month constituted harassment). The Plaintiff need not identify the dates and times of calls, but need only identify the frequency, as the overall pattern of calls is what constitutes harassment. Krapf v. Nationwide Credit, Inc., 2010 WL 2025323 at *2 (C.D. Cal. 2010); See also Pratt v. CMRE, 2012 WL WL 86957 at *2-3 (E.D. Mich. Jan. 11, 2012). Here, Defendant violated this section by calling Plaintiff multiple times a day.

3. **§1692e**: This section of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." See 15 U.S.C. §1692e. This section requires that any statements a debt collector makes to a person in an attempt to collect a debt must in fact be true. Sparks v. Phillips & Cohen

Assocs., Ltd., 641 F.Supp.2d 1234, 1248 (6th Cir. 2008). If a debt collector makes false statements in an attempt to collect a debt, this section is violated even if the Plaintiff was not deceived by those statements since the FDCPA. Id. Here, the Defendant: threatened to pursue legal action; a misrepresentation as Defendant made no moves to do so and thus clearly had no intent to do so.

    4.    **§1692e(5)**: This section of the FDCPA prohibits debt collectors from threatening any action that cannot legally be taken or that it does not intend to take. See 15 U.S.C. §1692e(5). The Defendant violated this section when it threatened to pursue legal action against the Plaintiff if she did not pay, which it did not do or show that it intended to do.

    5.    **§1692e(10)**: This section of the FDCPA prohibits debt collectors from "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt." See 15 U.S.C. §1692e(10). As described above, Defendant violated this section by threatening legal action it clearly did not intend to pursue, as none was ever taken.

    6.    **§1692f**: Section 1692f "broadly prohibits a debt collector from using "unfair or unconscionable means to collect...any debt." See Knoll v. Allied Interstate, Inc., 502 F.Supp.2d 943, 948 (D.Minn. 2007) (quoting 15 U.S.C. §1692f). Taken together Defendant's practices outlined above violate §1692f, which prohibits the use of any "unfair or unconscionable means to collect or attempt to collect any debt." See 15 U.S.C. § 1692f. This section operates both as a catchall for conduct that is recognizably unfair, but not explicitly enumerated in other sections of the FDCPA and as an umbrella for a pattern of misbehavior that overlaps provisions. See Matsuda v. Thomas Richards & Co., 759 F.Supp. 1456 (C.D. Cal. 1991). Thus, when a debt collector sent a deceptive collection letter which implied it was from an attorney as part of a pattern of improper conduct, that act violated both §1692d(3) prohibiting misleading or

deceptive collection methods and §1692f. Id. at 1460-1461. Here, the overall pattern of Defendant's conduct shows a violation of these claims.

7. Under § 1692g, a debt collector must provide a written notice explaining the debt and the debtor's rights, including the right to dispute. §1692g. Here, because no written notice was even send, Defendant violated the FDCPA.

### B. Damages

The Plaintiff is therefore entitled to the damages plead in the Complaint: (1) $1,000 statutory damages under the FDCPA pursuant to 15 U.S.C. §1692k; and (2) all reasonable attorney's fees and costs pursuant to 15 U.S.C. §1692k(a)(2)(A). See Docket Entry No. 1. The attorney's fees and costs are $3,595.50 per the attached fee bill. See Ex. B. So Plaintiff requests $4,595.50.

### III. ATTORNEY'S FEES

An award of attorney fees and costs is mandatory when a plaintiff brings a successful action under the FDCPA. See Zagorski v. Midwest Billing Services, Inc., 128 F. 3d 1165, 1166 (7th Cir. 1997). "Given the structure of [15 U.S.C. §1692k], attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." See Graziano v. Walkeron, 950 F. 2d 107, 113 (3d. Cir. 1991) Thus, an award of attorney's fees and costs to Plaintiff is integral to the success of the policy goals underlying the FDCPA.

Plaintiff is therefore entitled to reasonable attorney's fees and costs. As the U.S. Supreme Court has explained the calculation for an award of attorney's fees: "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an

objective basis on which to make an initial estimate of the value of a lawyer's services." See Hensley v. Eckerhart, 103 S. Ct. 1933, 1939 (1983). Although this decision arises in the context of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. §1988, these criteria are equally applicable here. "The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" See Id. at 1939, n.7. "We have stated in the past that fee-shifting statutes' similar language is 'a strong indication that they are to be interrupted alike." See Independent Federation of Flight Attendants v. Zipes, 109 S. Ct. 2732, 2735 n.2. (1989) (quoting Northcross v. Memphis Bd. of Education, 93 S. Ct. 2201, 2202 (1973)). The multiplication of the reasonable number of hours expended times the reasonable hourly rate is referred to as the "lodestar." See Friend v. Kolodzieczak, 72 F.3d 1386, 1389 (9th Cir. 1995).

The Plaintiff's fee bill uses the lodestar method and applies a reasonable hourly rate for each of the attorney's and legal support staff who worked on the case. "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." See People Who Care v. Rockford Bd. of Educ., 90 F. 3d 1307, 1310 (7th Cir. 1996) (citation omitted). "Once an attorney provides evidence establishing his market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *See Id.* at 1313. Here, Plaintiff requests $425.00/hr for founding and managing partner Crag Thor Kimmel, $300.00/hr for senior associates Amy L. Bennecoff Ginsburg and Tara L. Patterson, $265.00/hr for associate attorneys Richard Albanese and Ryan Fitzgerald, $165.00/hr for paralegals Christine Vargas and Melanie Panasiuk, $115.00/hr for law clerk Zach Kimmel, $115.00/hr for legal assistant Natasha Childs. See Ex. B. Plaintiff also seeks cost as set forth in the fee bill. Id. All of the time entries and costs in the fee bill were necessary and appropriate to Plaintiff

Counsel's successful prosecution of this case. Accordingly, Plaintiff respectfully requests an award of attorneys' fees based on the reasonable hourly rates requested.

## V. CONCLUSION

For all the above reasons, the Plaintiff respectfully requests that this Court grant her Motion for Default Judgment against Defendant in the amount of $4,595.50.

RESPECTFULLY SUBMITTED,

DATED: December 9, 2016         KIMMEL & SILVERMAN, P.C.

By: /s/ Amy L. Bennecoff Ginsburg
Amy L. Bennecoff Ginsburg
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, Pennsylvania 19002
Phone: (215) 540-8888
Facsimile:(877) 788-2864
Email: aginsburg@creditlaw.com

**CERTIFICATE OF SERVICE**

I, AMY L. BENNECOFF GINSBURG, ESQUIRE, do certify that I served a true and correct copy of Plaintiff's Motion for Default Judgment and Memorandum of Points and Authorities, in the above-captioned matter, upon the following via mail:

Vision Financial Corp
11960 Westline Industrial Drive
Suite 330
Maryland Heights, MO 63146

Dated:  December 9, 2016              By: */s/ Amy L. Bennecoff Ginsburg*
                                              Amy L. Bennecoff Ginsburg